IN THE UNITED STATES DISTRICT COURT
FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

NELLIE R. ROLLYSON,
    Plaintiff,

v.                                            Civil Action No.: 2:08CV84

MICHAEL O. LEAVITT, in his capacity as
SECRETARY OF THE U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
    Defendant.

## OPINION/REPORT AND RECOMMENDATION

This is an action against the Defendant MICHAEL O. LEAVITT, in his capacity as SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, for judicial review of the final decision of Medicare Appeals Council rendered in HIC Number WA234321503 denying Medicare Benefits for reimbursement of the cost of a Medflight of Ohio air ambulance transport of Plaintiff from CAMC in Charleston, West Virginia to Cleveland Clinic in Cleveland, Ohio on July 18, 2006. The matter is awaiting decision on Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion To Strike Plaintiff's Affidavits Or, In The Alternative, Defendant's Cross Motion For Summary Judgment and has been referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); L.R. Gen. P. 83.12.

## I. PROCEDURAL HISTORY

Plaintiff, on discharge from CAMC in Charleston, West Virginia, was flown by air ambulance to Cleveland Clinic in Cleveland, Ohio. Payment of the air ambulance costs was initially denied by the Centers for Medicare and Medicaid Services contractor: Palmetto GBA, LLC on August 4, 2006. R. 105. Plaintiff requested a redetermination. Palmetto again denied the claim for payment on March 14, 2007. R. 83-89. Plaintiff appealed the denial and

requested reconsideration by letter dated March 19, 2007.  R. 72-74.  Another CMS contractor, Q Administrators, LLC, denied coverage and payment on May 5, 2007. R. 66-69.

Plaintiff then requested a hearing.  R. 58-64.  A telephonic hearing before an ALJ was conducted September 24, 2007.  Plaintiff was present in person and was joined by her two daughters.  The ALJ left the record open for a limited period of time for post hearing submissions by Plaintiff.  The ALJ ruled that Plaintiff was not entitled to Medicare Part B reimbursement for the costs of her July 18, 2006 air ambulance transport because the services were not provided to a facility which was the nearest hospital capable of providing the level and type of care for Plaintiff's illness.  R. 26-37.

Plaintiff requested review by the Medicare Appeals Council.  The Appeals Council denied the request for review making the decision of the ALJ the decision of the Secretary. R. 6-9.

Plaintiff filed the within civil action August 4, 2008.  Plaintiff attached a letter dated June 5, 2008 from Dr. John Goad to her complaint as Exhibit 2.  DE 1-3.  The Secretary filed his answer on December 8, 2008.  DE 7.  January 20, 2009 Plaintiff filed her "Motion For Judgment On The Pleadings" to which Plaintiff attached two affidavits designated Attachment A and B.  DE 10.  On March 23, 2009 Defendant filed his "Motion To Strike Plaintiff's Affidavits Or, In the Alternative, Defendant's Cross-Motion For Summary Judgment."  DE 13.  Plaintiff filed her "Motion To Strike Defendant's Memorandum Of Law In Support Of Defendant's Motions" on April 3, 2009 for exceeding the page limitations prescribed by LRGenP 83.12( c )[*].  DE 15.  The next day, Plaintiff filed her "Response To Defendant's Motion To Strike Plaintiff's Affidavits And Defendant's Cross Motion For Summary Judgment."  DE 16.  Defendant filed his "Response To Plaintiff's Motion To Strike Defendant's Memorandum Of Law" on April 14, 2009.  DE 17.  On the same date Defendant filed his "Reply To Plaintiffs Response To HHS' Motion To Strike Or For Summary Judgment."  DE 18.

---

[*]Plaintiff identifies the rule offended by Defendant as: LRGenP 83.12( c ).  On April 8, 2009 the Local Rules of this Court were revised.  The revised rule corresponding to Plaintiff's motion is now LRGenP 86.02(e).  The undersigned will hereinafter refer to the Revised Rule.

## II. CONTENTIONS OF THE PARTIES

**Plaintiff**

Plaintiff, by counsel, contends:

1. The ALJ erred in concluding that the July 18, 2006 air ambulance transportation of Plaintiff from CAMC to Cleveland Clinic was not a Medicare covered service under 42 C.R.R. §410.40(e).

2. The ALJ erred in finding that "9. [t]he Discharge Summary states that Doctors Dans and Goad were ready, willing and able to perform the needed surgery, and further stated that 'the significant left main lesion surgery should be performed while in the hospital.'" DE 10, p. 2.

3. The ALJ erred in finding that "10. [t]he Discharge Summary on July 18, 2006 also states, 'all options, alternatives, risks and benefits were discussed with the patient. At this point in time, she wishes to receive a second opinion at Cleveland Clinic and these arrangements will be made ... all options, alternatives, risks and benefits, discharge instructions, risk factor reduction, and the risk of being transported have been discussed with her and her family. They verbalize understanding and wish to proceed with the evaluation at Cleveland Clinic.'" DE 10, p. 2.

Plaintiff, by counsel, contends in her Motion (DE 15) that:

1. Defendant's 18 page memorandum of law should be stricken and not considered because it exceeds the 15 page limit established under LRGenP 86.02(e).

2. Defendant's memorandum of law and cross motion for summary judgment should not be considered because it did not address one of the contentions and arguments raised by Plaintiff, to wit: "9. [t]he Discharge Summary states that Doctors Dans and Goad were ready, willing and able to perform the needed surgery" in violation of LRGenP 83.12( c )[**].

---

[**]Plaintiff refers to Defendant's alleged violation of LRGenP 83.12( c ). The Court's LRGenP were revised as of April 8, 2009. The revised rule, LRGenP 86.02(d), requires Defendant to "specifically ... address all of the contentions and arguments made by the

**Defendant**

Defendant contends:

1. He did respond to all the arguments raised by Plaintiff as required by LRGenP 86.02(d).
2. His memorandum exceeds the page limitation established by 86.02(e) but is willing to move for leave to exceed the page limitation if requred to do so by the Court.
3. Substantial evidence supports the findings and conclusions of the ALJ.

### III.  STATEMENT OF RELEVANT FACTS

Nellie Rollyson, born December 12, 1926, awoke at 4:45 am "sweating: feeling hot and cold and having a cough." R. 139. At 5:50 am when the nurse came to collect urine, Rollyson's daughter is reported to have said: "forget the urine"; "that's not the problem. I'm taking her to Charleston."... We don't care for the doctor and I'm just going to take her to CAMC." R. 137-138. Rollyson was discharged from Braxton against medical advice. R. 137.

On the way to and at the Charleston Area Medical Center (CAMC) Rollyson was having having anterior chest discomfort and associated shortness of breath. Rollyson presented to the Emergency Room at CAMC and was evaluated by Dr. Goad. By electrocardiogram, he diagnosed Rollyson to have an acute inferior myocardial infarction. R. 129.

Rollyson was "emergently taken" to the CAMC cardiac Cath lab. By catherization, Rollyson was found to have "an occluded right coronary artery ... a significant 80% LAD stenosis with a 70% diagonal stenosis, a 75% first obtuse marginal stenosis and a 60% left main stenosis ... left ventricular ejection fraction ... depressed at 35% and 3-4+ mitral regurgitation on left ventriculogram." Rollyson underwent "an emergent PTCA and stent of the right coronary artery with subsequent TIMI III flow." " An intraaortic balloon pump was inserted and [Plaintiff] was then transferred to the coronary care unit." R. 129. It was Dr. Goad's impression that Rollyson "would benefit from coronary revascularization. Because

---

plaintiff in the same order in which the plaintiff has stated them in his or her brief." The undersigned will hereafter refer to LRGenP 86.02(d) when addressing this issue.

she was noted to have severe mitral regurgitation, we should check an echocardiogram. ... we will check carotid duplex due to her left main stenosis. Because of her substantial acute inferior myocardial infarction, **we should postpone surgery for a minimum** of 48 hours to allow recovery of cardiac function. **Will tentatively schedule her** for coronary revascularization on Wednesday morning with possible concomitant mitral valve repair." R. 130. In the post catherization Invasive Vascular Procedure Report dictated July 17, 2006 at 8:50 pm Dr. Goad stated: "At this point, the procedure is to abort the myocardial infarction. The patient will need surgery at a later date, will consult CVTS (cardio vascular thorasic surgeon)." R. 128. (emphasis added by the undersigned)

Rollyson was next seen at CAMC by Dr. Nestor Dans for consultation relating to possible cardiothoracic surgery. Dr. Dans reported he felt Rollyson "needed to stop Plavix for 5 days prior to undergoing surgery." He opined: "As she had just had implantation of a drug eluting stent this was not felt to be in her best interest." Dr. Goad was stated to have "felt with the significant left main lesion surgery certainly should be performed while in hospital. **All options, alternatives, risks and benefits were discussed with the patient. At this point in time, she wishes to receive a second opinion at Cleveland Clinic and these arrangements will be made."** (emphasis added by the undersigned) R. 133.

As Rollyson was readied for discharge, it is noted in the July 18, 2006 Discharge Summary that was dictated at 3:19 pm "All options, alternatives, risks and benefits, discharge instructions, risk factor reduction, and the risk of being transported have been discussed with the patient and her family. They verbalize understanding and wish to proceed with evaluation at Cleveland Clinic." R. 133.

Rollyson was discharged from CAMC and was transported by helicopter air ambulance to the Cleveland Clinic on July 18, 2006.

After the August 4, 2006 denial of Medicare reimbursement for the air ambulance tansport costs, Rollyson sought and obtained a letter dated February 27, 2007 from Dr. Goad in which he states: "She was seen by cardiothoracic surgery at CAMC and was felt not to be an immediate candidate for surgery. At that point arrangements were made for tansfer to Cleveland.Clinic." R. 125. In the next paragraph of the same letter, Dr. Goad stated: "In the patient;s condition with recent MI, stent and placement of balloon pump, it was felt she was unstable for transport by ground and should be flown to Cleveland Clinic. She was having

post intervention runs of ventricular tachycardia as much as 37 beats." R. 125.

## IV. Discussion

A.   Scope of Review

In reviewing an administrative finding the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Fourth Circuit held, "Our scope of review is specific and narrow. We do not conduct a de novo review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" Hays, 907 F.2d at 1456 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

B.   Post ALJ Decision Exhibits

Plaintiff wants the undersigned to consider the June 5. 2008 letter of John Goad, MD FACC attached to the complaint in this action as Exhibit 2 (DE 1-3); the affidavit of John L. Goad, MD FACC dated January 19, 2009 attached to Plaintiff's Memorandum in support of her motion for judgement on the pleadings or summary judgment (DE 10-2); and the affidavit of Nestor F. Dans, MD dated January 12, 2009 and attached to Plaintiff's Memorandum in support of her motion for judgement on the pleadings or summary judgment (DE 10-3).

Each of these documents was created after the administrative record before the ALJ was long closed. They were not considered by the ALJ in making the decision now under attack.

"Reviewing Courts are restricted to the administrative record in performing their limited

function of determining whether the Secretary's decision is supported by substantial evidence. Huckabee v. Richardson, 468 F.2d 1280- 1381 (4th Cir. 1972) citing Domanski v. Celebrezze, 323 F.2d 882, 885 (6th Cir. 1963, cert denied, 376 U.S. 958, 84 S.Ct. 980, 11 L.Ed.2d 976 (1964) and 42 U.S.C. §405(g). As a reviewing Court, the undersigned is not permitted to "find facts anew or conduct a trial *de novo.*" *Id.* citing Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1970).

In Smith v. Chater, 99 F.3d 635, 638 n5 (4th Cir. 1996) (citing United States v. Carlo Bianchi and Company, 373 U.S. 714-15 (1963), the court stated:

> Smith also submitted additional evidence to the district court (evidence not submitted during the administrative proceedings) that she contends should have been considered in reviewing her case or, in the alternative, that called for the district court to remand her claims to the ALJ for further consideration. This evidence consisted . . . .
>
> The district court did not err by refusing to consider this additional evidence or by refusing to remand the case so the ALJ could do so. First, in determining whether the ALJ's decision is supported by substantial evidence, a district court cannot consider evidence which was not presented to the ALJ See United States v. Carlo Bianchi & Co., 373 U.S., 709 714-15, 83 S.Ct.1409, 1413-14, 10 L.E.2d 652 (1963). Second, the additional evidence was not new or material, and therefore, did not warrant remand here. *See* 42 U.S.C.A. §405(g) (West Supp. 1996) (The district court may only order additional evidence to be taken before the Commissioner upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

Plaintiff seeks to have the Court consider the affidavits of Drs. Goad and Dans because: 1) Plaintiff was not represented by counsel during the administrative process and 2) present counsel for Plaintiff felt the record needed to be set straight with respect to what was meant by the medical record by bringing in matters from outside of that record.

Neither reason is a justification for considering the affidavits of Drs. Goad and Dans.

The affidavits were clearly created outside of the record and are attempts at redefining what the record meant. The medical record is not vague or ambiguous and does not require redefinition or reinterpretation. The undersigned is bound by the record that was before the ALJ in determining whether substantial evidence supports his decision. The undersigned may not consider what someone later interprets that record to mean.

As previously stated, the affidavits of Drs. Goad and Dans are their reinterpretations of what they meant by what was written and said in the medical record. As such, they are not new or material evidence that justifies a remand.

Plaintiff's assertion that the FRCivP and the Local Rules do not prohibit but instead contemplate the filing of affidavits in support of or opposition to motions for summary judgment is misplaced. This is not the usual civil action. This is a limited appeal from an administrative decision. To consider the affidavits in question requires the Court to ignore the body of case law herein cited prohibiting consideration of evidence outside of the administrative record and dispenses with the administrative process provided for by statute. This the undersigned will not do.

Finally, other than the fact that Plaintiff did not have counsel during the administrative hearing process, no good cause or excuse is offered why this evidence was not offered in the proceeding before the ALJ. Plaintiff does not assert she was prevented from providing the information during the administrative process.

Accordingly the undersiged will not consider the affidavits of Drs. Goad and Dans.

C. ALJ erred in finding that "9. [t]he Discharge Summary states that Doctors Dans and Goad were ready, willing and able to perform the needed surgery, and further stated that 'the significant left main lesion surgery should be performed while in the hospital.'"

The record is clear that Dr. Goad diagnosed Plaintiff: 1) to have suffered an acute myocardial infarction and 2) to have "an occluded right coronary artery ... a significant 80% LAD stenosis with a 70% diagonal stenosis, a 75% first obtuse marginal stenosis and a 60% left main stenosis ... left ventricular ejection fraction ... depressed at 35% and 3-4+ mitral regurgitation on left ventriculogram." Dr. Goad performed "an emergent PTCA and stent of the right coronary artery with subsequent TIMI III flow" and inserted "[a]n intraaortic balloon pump ... and [Plaintiff] was then transferred to the coronary care unit." Dr. Goad felt that Rollyson "would benefit from coronary revascularization" but "[b]ecause of her

substantial acute inferior myocardial infarction, **we should postpone surgery for a minimum of 48 hours** to allow recovery of cardiac function." Dr. Goad stated he would "**tentatively schedule her** for coronary revascularization on Wednesday morning with possible concomitant mitral valve repair." R. 130. (emphasis added by the undersigned). In the post catherization Invasive Vascular Procedure Report dictated July 17, 2006 at 8:50 pm Dr. Goad stated: "At this point, the procedure is to abort the myocardial infarction. The patient will need surgery at a later date, will consult CVTS (cardio vascular thorasic surgeon)." R. 128.

On consult, Dr. Dans reported he felt Rollyson "needed to stop Plavix for 5 days prior to undergoing surgery" opining: "[a]s she had just had implantation of a drug eluting stent this was not felt to be in her best interest." Dr. Goad was stated to have "felt with the significant left main lesion surgery certainly should be performed while in hospital."

This record clearly supports the ALJ's conclusion that Drs. Goad and Dans were ready, willing and able to perform the needed surgery. What the record does not say is when the surgery would actually be performed at CAMC. Rollyson is not complaining that the Doctors at CAMC were not ready, willing and able to do the surgery. Instead, Rollyson is complaining in this appeal and, apparently on the date of her air ambulance tranfer from CAMC to Cleveland Clinic she was complaining, that the Doctors were not ready, willing and able to do it when she (her family) wanted it done. The CAMC Doctors clearly expressed their plan to stabilize Rollyson from the myocardial infarction prior to performing the needed surgery. They clearly expressed their plan to do the revacularization while Rollyson was in the hospital. This conclusion is further supported by Dr. Goad's letter of February 27, 2007 wherein he stated: "She was seen by cardiothoracic surgery at CAMC and was **felt not to be an immediate** candidate for surgery." (emphasis added by the undersigned).

The undersigned concedes that the Discharge Summary does not state that "Doctors Dans and Goad were ready, willing and able to perform the needed surgery."

Notwithstanding the above concession, the administrative record fully and substantially supports the conclusion of the ALJ that "[t]he Discharge Summary states that Doctors Dans and Goad were ready, willing and able to perform the needed surgery, and further stated that 'the significant left main lesion surgery should be performed while in the hospital.'"

D.  The ALJ erred in finding that "10. [t]he Discharge Summary on July 18, 2006 also

states, 'all options, alternatives, risks and benefits were discussed with the patient. At this point in time, she wishes to receive a second opinion at Cleveland Clinic and these arrangements will be made ... all options, alternatives, risks and benefits, discharge instructions, risk factor reduction, and the risk of being transported have been discussed with her and her family. They verbalize understanding and wish to proceed with the evaluation at Cleveland Clinic.'" DE 10, p. 2.

This argument is without merit.

When it became apparent to the Doctors that Rollyson (her family) wanted to leave the hospital for a second opinion, the hospital staff advised her of the risks of her being moved and noted the following in the medical record: "**All options, alternatives, risks and benefits were discussed with the patient. At this point in time, she wishes to receive a second opinion at Cleveland Clinic and these arrangements will be made.**" (emphasis added by the undersigned).

As Rollyson was readied for discharge, it is noted in the July 18, 2006 Discharge Summary that was dictated at 3:19 pm "All options, alternatives, risks and benefits, discharge instructions, risk factor reduction, and the risk of being transported have been discussed with the patient and her family. They verbalize understanding and wish to proceed with evaluation at Cleveland Clinic." R. 133.

The ALJ's finding is a direct quote from the medical record. Accordingly, it is substantially supported by that record.

E.  There is no support in the administrative record to support any conclusion that the "Cleveland Clinic was not in fact the nearest appropriate facility that could provide the necessary care to the Plaintiff." (DE 10, p. 6).

Again it must be noted that the ALJ did not have the June 5, 2008 John Goad MD letter of explanation before her at the time she made the decision in this case.[***]

The record that was before the ALJ clearly and substantially shows that contemporaneous with the decision to seek a transfer to Cleveland Clinic, the physicians in

---

[***]The explanatory letter of Dr. Goad dated June 5, 2008 cannot be considered by the undersigned for the reasons set forth in the body of this Opinion/Report and Recommendation.

charge of Plaintiff's care expressed their plan of action: 1) stabilize the myocardial infarction and 2) perform the revascularization surgery while Rollyson was in the hospital. This was not satisfactory to Plaintiff's family and they elected to transfer their mother from the facility the evidence showed could provide the required medical care to another facility for a second opinion. It is important to note that at the moment of transfer, Cleveland Clinic had not seen or evaluated Plaintiff. Therefore, it would have been impossible for anyone to know at the time of transfer that Cleveland Clinic would perform a recascularization surgical procedure on Plaintiff once she did arrive at that facility. This supports the ALJ's conclusion that the transfer from CAMC was to obtain a second opinion and it supports the ALJ's conclusion that the transfer was not to the closest medical facility that could provide the required medical services to Plaintiff.

Plaintiff argues that the Commissioner did not carry the burden of proving that "Cleveland Clinic was not the closest facility to perform the contemplated necessary surgery." This argument is contrary to the well recognized law that the ultimate burden of proving entitlement to medicare coverage for air ambulance transport costs rests with the Plaintiff. Keefe on Behalf of Keefe v. Shalala, 71 F.3d 1060 (2nd Cir 1995) "Ultimately, however, the claimant bears the burden of proving her entitlement to Medicare coverage."

This argument also assumes that the evidence shows CAMC was unable to perform the surgery and therefore was not the closest facility. Such an assumption is contrary to the evidence before the ALJ. Accordinly, the undersigned concludes that the burden of proof never shifted to the Commissioner to prove that Cleveland Clinic was not the closest facility to provide the required care since the evidence of record before the ALJ clearly established that CAMC is where Plaintiff was already and therefor was the closest such facility and Plaintiff did not carry her burden of proving otherwise.

This entire case revolves around the immediacy of the surgery. The undersigned concludes from the evidence of record as did the ALJ that the physicians at CAMC were in accord that the revascularization surgery needed to be done while Plaintiff was at CAMC. In other words, she was not going to be discharged to home and then later brought back for surgery. They were also in accord that the surgery would not be done immediately. Instead there is accord that the surgery would be done after Plaintiff's heart had been stabilized and she could be weened off Plavix. From a review of the record before the ALJ the undersigned

concludes as did the ALJ that this plan of action was not sufficient in the minds of the family of Plaintiff and they insisted on her being transferred to another hospital (Cleveland Clinic) for a second opinion.

In light of the totality of the evidence before the ALJ the undersigned finds that substantial evidence supports her conclusion that "Cleveland Clinic was not in fact the nearest appropriate facility that could provide the necessary care to the Plaintiff."  (DE 10, p. 6). Based on the substantial evidence, the nearest appropriate facility that could provide the necessary care to the Plaintiff was CAMC, the facility in which the attending physicians stated they could provide the care and who had outlined the care action plan.

F. Failure to provide the Plaintiff or her family members with an ABN (Advanced Beneficiary Notice) requires remand.

The Plaintiff did not raise this issue before the ALJ.  The Plaintiff did not raise this issue in any of her pleadings before this Court.  The first time she raised this issue was in her "Response To Defendant's Motion To Strike Plaintiff's Affidavits And Defendant's Cross Motion For Summary Judgment" filed April 3, 2009. (DE 16, p. 6-8).  Defendant contends Plaintiff's failure to raise the issue prior to her response brief bars consideration of the matter now.  In response to Plaintiff's reliance on Beckett v. Leavitt, 555 F.Supp.2d 521 (E.D.Pa. 2008), Defendant argues that in Beckett "the plaintiff presented the lack of consideration of an ABN in her complaint and initial argument".  The undersigned has reviewed Beckett and concludes therefrom that the first time therein the issue was raised was in Plaintiff's Cross Motion for Summary Judgment. *Id.* at 531.  Accordingly, the undersigned cannot construe *Beckett* to stand for the proposition that failure to raise the issue of a lack of an ABN at the ALJ level or in the pleadings before the Court bars it being later raised at the dispositive motion stage of the case.

Insofar as Plaintiff relies on Beckett v. Leavitt, *Id.* in support of her claim, the undersigned notes that *Beckett* is distinguishable from Plaintiff's case.  The District Judge reviewing the report and recommendation of the Magistrate Judge, held that the Magistrate Judge found that the ALJ did not correctly articulate the weight applied to the evidence; failed to consider all of the relevant evidence (Dr. Economou's opinion evidence); and failed to explain whether Lankenau Hospital was the nearest appropriate facility to treat Mr. Beckett. The District Judge also found that "the ALJ in this matter should have determined whether

an ABN was necessary, and if so, determined whether or not one was indeed given to Plaintiff." Since "[t]he ALJ failed to make this determination regarding the necessity of an ABN, ... we would also remand this matter for the ALJ to determine whether Plaintiff should have been provided with an ABN." *Id.* at 531.

In the instant case the undersigned finds that the ALJ correctly found and substantial evidence supported his finding that CAMC was the nearest hospital that could offer Rollyson appropriate treatment, not Cleveland Clinic. The undersigned further finds that an ABN is not required and the ALJ did not err in sua sponte failing to consider it in his decision. "Ambulance services denied because transportation by other means is not contraindicated or because regulatory criteria specified in 42 CFR 410.40, such as thosse relating to destination or nearest appropriate facility, are not met. In such circumstances, Medicare payment is denied on the basis of § 1861(s)(7) of the ACT" Simply stated, the denial of payment for the ambulance service is based on a threshhold determination it was not necessary to go to Cleveland when CAMC was the nearest appropriate facility that could provide the appropriate treatment. Therefor, there is no need to reach whether an ABN should have been provided to Plaintiff or whether emergent circumstances existed prohibiting the giving of the ABN.

G. Plaintiff's motion to Strike Defendant's Memorandum of Law [DE15] for exceeding the prescribed page limit is **DENIED**.

The substantive portion of Defendant's memorandum is sixteen (16) pages in length inclusive of a summary argument with is repetitive of the arguments already made in the first fifteen pages. The other two pages contain a conclusion, signature of responsible attorney and the parties represented, their addresses and a certificate of service. While the memorandum technically is violative of the rule, there is nothing substantive in the excess pages over the permitted fifteen which the undersigned considered.

It is so **ORDERED.**

## V. RECOMMENDATION

For the reasons herein stated, I find substantial evidence supports the Secretary Of The U.S. Department Of Health and Human Services decision denying coverage for air ambulance charges incurred by Plaintiff on July 18, 2006. I accordingly **RECOMMEND** Defendant's Cross Motion for Summary Judgment [DE 13] be **GRANTED,** and the Plaintiff's "Motion For Judgment On The Pleadings" [DE 10] be **DENIED** and this matter be dismissed and

stricken from the Court's docket.

In accord with Amended Fed.R.Civ.P. 72(b)(2), any party may, within fourteen (14) days after being served with a copy of this Opinion/Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Opinion/Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Opinion/Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Opinion/Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk is directed to remove DE 15 from the docket of motions actively pending before this Court.

The Clerk of the Court is directed to mail an authenticated copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 10th day of December, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE